## L. W. SMITH *v.* JOSEPH EVERETT.

1. PRACTICE — EQUITY — JURISDICTION. — The constitution confers upon the chancery court full jurisdiction of all matters in equity, and equity is defined to be that system of justice which is administered by the high court of chancery in England in the exercise of its extraordinary jurisdiction; but the ordinary branch of that court constitutes no part of the jurisdiction of the court of chancery here.

2. SAME — ADMINISTRATION OF ESTATES. — In this country, the jurisdiction over the administration of estates of decedents is conferred upon courts of probate, surrogate or orphan's courts, which, in general, possess the powers of the ecclesiastical courts of England upon the subject. Proper means are provided to compel the executors and administrators to collect the assets, to settle proper accounts, and to satisfy the claims of creditors, legatees and distributees. But it sometimes happens that, in order to obtain the relief required, other remedies than those which are incident to the procedure in these tribunals are necessary, in which case a resort to chancery becomes unavoidable. Thus, a bill may be filed by a creditor, to subject to his debts real or personal property fraudulently disposed of by the decedent in his life-time. Or, to follow assets which have passed into the hands of legatees or distributees, where the remedies against the

executor or the administrator have been exhausted. And, in some other instances, the equitable remedy has to be invoked, in order to meet cases which cannot be properly dealt with in other tribunals.

3. SAME—ADMINISTRATOR — HOW FAR HE IS A TRUSTEE.— It has been sometimes said, that an executor or administrator holds the assets in the character of a trustee, and that the jurisdiction of equity attaches on the existence of the trust. It is true that, in one sense, an executor or administrator may be called a trustee, as any person may be so called who is bound to apply property for the benefit of others; but he is not a trustee in that technical sense, so as to give a court of equity jurisdiction on the grounds of equity alone. The jurisdiction of the chancery court and the probate court are separate and distinct in their powers, purposes and objects, and are not to be confounded, though administered by the same tribunal. Troup v. Rice, 49 Miss., 250.

4. SAME — SUIT ON THE BOND OF AN ADMINISTRATOR.— The sureties on an administration bond cannot be properly joined in proceedings against the administrator for an account and final settlement of the estate. They are responsible only upon the bond, and must be sued at law, after proper steps have been taken to fix the liability of the administrator. Green, Adm'r, v. Tunstall, 5 How., 651. The bond, with its conditions, is not intended to transfer the jurisdiction from the probate court.

5. SAME — SAME — CONSTITUTIONAL LIMIT, REVISED CODE 1871, SEC. 976.— So much of section 976, of the Revised Code of 1871, as attempts to confer upon chancery courts power and jurisdiction to entertain suits on the bonds of executors and administrators and guardians, is unauthorized by the constitution, and void.

APPEAL from the Chancery Court of Noxubee County. Hon. THOMAS CHRISTIAN, Chancellor.

The facts in this case are stated sufficiently full in the opinion of the court.

The following is assigned for error, to wit:

" The court erred in overruling defendant's demurrer to complainant's bill filed."

*Foote & Foote*, for appellants:

The bill, on its face, does not make out a case for equitable relief, because the decree rendered upon the final account of Stone was against him as administrator of Carraway, in favor of the appellant and others, heirs of Benjamin Sherrod, deceased.

Stone, as administrator, should have brought the money into court for distribution. He should have sued the sureties of Caraway for the deficit, but instead of doing so, he reported a defalcation of a certain amount, and divided by the decree of the court that which he did not have, alleging the estate of Caraway to be insolvent, thereby creating a liability against the sureties without notice. The bill is filed by Joseph Everett alone, and it shows that there are other parties interested who are not made parties complainants or defendants. All the parties in interest should have been before the court. Bailey v. Inglee, 2 Paige, 278; Story's Eq. Pl., §§ 137, 287.

The bill discloses the fact that the complainant, if entitled to recover at all, has a full and complete remedy at law. Mittf. Eq. Pl., 123–5–6; Story's Eq. Pl., §§ 490, 47; 3 Cooper's Eq. Pl., 124. Equity jurisdiction will be entertained to redress a wrong, where there is no plain, adequate and complete remedy at law. 1 Story's Eq. Jur., § 49. It is a rule well settled in chancery proceedings, that a multiplicity of suits must be avoided, and will not permit a decree upon a bill for a part of a matter only, where the whole can be brought and determined in one suit. Cooper Eq. Pl., 184, 5; Mittf. Eq. Pl. Jur., 183; Story's Eq. Pl., sec. 287.

*Jarnagin & Rives,* for appellee:

The bill was filed by Joseph Everett, against the sureties on the administrator's bond, to enforce the collection of $409.67, the amount found to be due him on final settlement of the estate, as one of the heirs at law and distributees of the estate of Benjamin Sherrod, deceased, under the provisions of sec. 976 of the Revised Code of 1871; to this bill, defendant Smith filed a demurrer, which was overruled by the court. We submit to the court, whether art. 3, sec. 976, does not settle the first cause of demurrer, and by which the chancery court has full and complete jurisdiction of the subject matter of this suit. In relation to the second ground of demurrer, there is nothing in the bill which shows any interest in any other person for the amount claimed. The amount

37

due Everett is fixed by decree of the chancery court, separated from the gross amount, and he alone is interested in it, and others cannot be made. parties to it. Story's Eq. Pl., 207, 225, 235. This cause of the demurrer is defective. See Story's Eq. Pl., 238.

PEYTON, C. J., delivered the opinion of the court:

It appears from the record in this case, that Joseph G. Caraway as administrator of the estate of Benjamin Sherrod, deceased, entered into bond with C. C. Tate, R. Sherrod and L. W. Smith as his sureties therein, for the faithful administration of said estate. That after a partial administration of the estate, the said Caraway died, and Lewis Stone became his administrator, who made a settlement of his intestate's account as administrator of the estate said Benjamin Sherrod; and upon said settlement, the estate of of the said Caraway was declared to be due and indebted to Joseph Everett, one of the heirs of the estate of the said Benjamin Sherrod, the sum of $409.67, which was decreed to be paid to him as his distributive share of said estate.

The said Joseph Everett filed his bill in the chancery court of Noxabee county, alleging the above stated facts, and also that no assets of the estate of the said Caraway ever came to the hands of his administrator, who resides in the state of Alabama, and that the estate of said Caraway is wholly insolvent; that R. Sherrod, one of the sureties on the administration bond of the said Joseph G. Caraway, is deceased, and no administration of his estate has been had. That said sum of money remains due and unpaid to the complainant, who prays in his said bill that upon a final hearing of the cause, the said C. C. Tate and L. W. Smith, as sureties upon said administration bond, may be ordered and decreed to pay to the complainant the said sum of $409.67, found due him upon settlement as aforesaid, for his distributive share as one of the heirs of the said Benjamin Sherrod, deceased.

To this bill of complaint, one of the defendants, L. W. Smith, filed a demurrer, alleging among others, as causes of demurrer,

the want of equity on the face of the bill, and that there is a full and adequate remedy at law. The demurrer was overruled by the court, and hence the cause is brought to this court by the said L. W. Smith, who assigns for error the action of the court below in overruling the demurrer.

This case presents the important question for our consideration, whether under our system of jurisprudence, a court of chancery can entertain jurisdiction, and give relief against sureties on the administration bond, for the breaches of the condition thereof by the administrator in the maladministration of the estate. And in the decision of this question, it becomes necessary to inquire into the powers and jurisdiction of the court of chancery under our present constitution.

The 16th section of the 6th article of the constitution provides, that chancery courts shall be established in each county in the state, with full jurisdiction in all matters in equity, and of divorce and alimony; in matters testamentary and of administration; in minors' business and allotment of dower, and in cases of idiocy, lunacy and persons *non compos mentis.* From this, we see that the constitution confers upon the chancery court full jurisdiction of all matters in equity, and equity is defined to be that system of justice which is administered by the high court of chancery in England in the exercise of its extraordinary jurisdiction. Bispham's Principles of Equity, 1. Upon reference to the history of that court in England, it will be seen that it consisted of two distinct tribunals : the one, ordinary, being a court of common law ; the other, extraordinary, being a court of equity. The ordinary branch of that court constitutes no part of the jurisdiction of the court of chancery here.

In England, the administration of estates of decedents belonged to the ecclesiastial courts, and in this country the jurisdiction over the administration of the estates of decedents is conferred upon courts of probate, surrogate or orphans' courts, which, in general, possess the powers of the ecclesiatical courts in England upon the

subject. Proper means are provided to compel the executors and administrators to collect the assets, to settle proper accounts, and to satsify the claims of creditors, legatees and distributees. But it sometimes happens, that in order to the relief required, other remedies than those which are incident to the procedure in these tribunals, are necessary, in which case a resort to chancery becomes unavoidable. Thus, a bill may be filed by a creditor to subject real or personal property, frauduently disposed of by the decedent in his lifetime, to his debts. Pharis v. Leachman, 20 Ala., 662, and Hagan v. Walker, 14 How., 29. Or to follow assets which have passed into the hands of legatees or distributees, where the remedies against the executor or administrator have been exhausted. Ledyard v. Johnston, 16 Ala., 548. And in some other instances, the equitable remedy has to be invoked in order to meet cases which cannot be properly dealt with in other tribunals.

It has been sometimes said that an executor or administrator holds the assets in the character of a trustee, and that the jurisdiction of equity attaches on the existence of a trust. It is true that in one sense, an executor or administrator may be called a trustee, as any man may be so called who is bound to apply property for the benefit of others ; but he is not a trustee in the technical sense, so as to give a court of equity jurisdiction on the ground of trust alone.

Judge Story says, that much of the English doctrine in regard to the extent and the foundation of equity jurisdiction, in matters affecting the settlement of estates, has no application to many of the American states. The courts of probate in this country have ample powers, both in the extent of their jurisdiction and their mode of procedure, for the accomplishment of the principal objects, upon the attainment of which the English equity jurisdiction, in such matters, is founded. Hence, in this country, courts of equity do not ordinarily interfere in the administration of estates. 1 Story's Eq., sec. 543.

Prior to the adoption of the present constitution, the adminis-
tration of estates of decedents pertained almost exclusively to the
courts of probate, which were governed by a system of laws
adapted to that purpose. The administration of these probate
laws was transferred by the constitution to the chancery courts,
and forms a branch of the chancery court, separate and distinct
from that of a court of equity proper. These jurisdictions, dis-
tinct in their powers, purposes and objects, although administered
by the same tribunal, are not to be confounded. The chancery
court in the administration of the probate laws must be governed
by the same rules and principles of law which governed the courts
of probate, before the transfer of their jurisdiction in matters tes-
tamentary, and of administration to the chancery courts. And
this view accords with the decisions of this court in the cases of
Troup v. Rice, 49 Miss., 250; Saxon v. Ames, 47 ib., 568; and
Wells v. Smith, 44 ib., 304.

The equity jurisdiction conferred upon the chancery court by
the existing constitution cannot be enlarged by legislative enact-
ment; common law powers cannot be thus given to it.

The case of Payne v. Hook, in 7 Wallace, 425, was a bill in
chancery against the administrator and the sureties on his bond.
The bill charges gross misconduct on the part of the administrator;
that he had made false settlements with the probate court; with-
held a true inventory of the property in his hands; used the
money of the estate for his private gain; and obtained from the
complainant, by fraudulent representation, a receipt in full of her
share of the estate, on payment of a less sum than she was entitled
to receive. The object of the bill was to obtain relief against
these fraudulent proceedings, and to compel a true account of ad-
ministration, in order that the real condition of the estate may be
ascertained, and the complainant paid what justly belongs to her.
It appeared from the bill that Hook had not yet made his final
settlement. In that case the court say that the circuit court of the
United States, for the district of Missouri, had jurisdiction to hear

and determine this controversy, notwithstanding the peculiar structure of the Missouri probate system, and was bound to exercise it, if the bill, according to the received principles of equity, states a case for equitable relief. The absence of a full, complete and adequate remedy at law, affords the only test of equity jurisdiction, and the application of this principle to a particular case, must depend altogether upon the character of the case, as disclosed in the pleadings. The facts as charged in the bill show abundant elements of equity. The court says: "It is very evident that an action at common law, on the bond of the administrator, would not give to the complainant a practical and efficient remedy for the wrongs which, she says, she has suffered. A proceeding at law is not flexible enough to reach the fraudulent conduct of the administrator, which is the ground work of this bill, nor to furnish proper relief against it.

In this state it is believed that the sureties on an administration bond cannot properly be joined in proceedings against the administrator for an account and final settlement of the estate. They are responsible only upon the bond, and must be sued at law, after proper steps have been taken to fix the liability of the administrator. Green, Adm'r, v. Tunstall, 5 How., 651. It is held in Alabama to be the true rule that an action can only be maintained against the sureties on the bond at law, and then only after a final settlement and decree of the court ascertaining the amount of the liability of the administrator, and directing him to pay it. This appears to be the settled doctrine in that state. 1 Porter, 70, and 3 Stewart and Porter, 263 and 348. The same rule prevails in South Carolina, where it has been repeatedly decided that the sureties on an administration bond cannot be made parties to a proceeding against the administrator for an account, but can only be made liable on the bond in a suit at law after a decree against the administrator on the settlement of his accounts. Simkins v. Cobb, 2 Bailey, 60; Ordinary v. Robinson, 1 Bailey, 27; 1 Nott & McCord, 587, and 4 Nott & McCord, 113 and 120. This is believed to be the doctrine of Virginia.

The ordinary bond for faithful administration is not intended to transfer the jurisdiction of questions connected with such administration from the appropriate and exclusive sphere of the courts exercising probate jurisdiction to that of the common law courts. But these bonds are designed to secure the enforcement of the decrees of the court having jurisdiction in matters testamentary, and of administration, such as the chancery court under our present judicial system, which has succeeded to the jurisdiction of the probate court under the former system in the administration of estates of decedents.    But after the amount due the party in interest has been ascertained, and the court administering the probate laws has decreed the payment of the amount so found due, the party is in condition to enforce his remedy upon the administration bond in a court of law.    3 Redfield of the Law on Wills, 95 ; Gandolfo v. Walker, 15 Ohio, N. S., 251. .

Where courts of equity exist, as in this state, their jurisdiction should be kept separate and distinct from that of the courts of common law.    Bonds are legal obligations, and suits to recover damages for the breach of their conditions are properly cognizable in the courts of law.    Before the adoption of the present constitution when the administration of decedent estates pertained to the court of probate, we are not aware of any suit having ever been brought in a court of equity on an administrator's bond for the recovery of damages for breaches of the condition thereof. But such suits were invariably instituted in the courts of law.    For a time such bonds were made payable to the judge of probate, and were put in suit in his name for the use of any person injured by the breach thereof.    And the present law provides that the bonds of executors, administrators and guardians shall be made payable to the state of Mississippi, and shall be put in suit in the name of said state, for the use and benefit of any person injured by the breach thereof.    Section 311 of the Code of 1871.

In a court of law suit is sometimes brought in the name of the person having the legal title to the instrument sued on for the use

of the equitable owner; but this is never done in a court of chancery. The equitable owner brings the suit in his name, and recovers on his equitable title. This provision of the Code clearly shows that the legislature contemplated no change in the forum in which suits shall be brought on these official bonds. And therefore so much of section 976 as attempts to confer upon chancery courts power and jurisdiction to entertain suits on the bonds of executors, administrators and guardians, is unauthorized by the constitution, and void.

In most of the American states at the present day, courts of equity interfere in the administration of estates to a very limited extent, and only where the powers of the courts of probate, or of those exercising their jurisdiction, and their modes of procedure preclude them from doing complete justice. There must be some equitable element in the case to justify the interposition of a court of equity proper in the administration of estates of decedents.

The decree must be reversed, and this court proceeding to render such decree as the court below ought to have rendered, doth order, adjudge and decree that the defendant's demurrer to the complainant's bill of complaint be sustained, and the bill dismissed.