914 So.2d 769 (2005)
Dr. Alexander N. ASANOV, Appellant/Cross-Appellee
v.
Marina Y. HUNT f/k/a Marina Y. Asanov, Appellee/Cross-Appellant.
No. 2004-CP-00284-COA.
Court of Appeals of Mississippi.
November 8, 2005.
*770 Alexander N. Asanov, Appellant, pro se.
George M. Mitchell, Jr., Eupora, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. Dr. Alexander Asanov (Dr. Asanov) and Marina Hunt (Hunt) were married in Moscow, Russia on June 5, 1986. Dr. Asanov and Hunt have two children, Kate, born in 1986, and Dmitry, born in 1989. In 1994, Dr. Asanov accepted a research and teaching position at Mississippi State University, and the family relocated to Starkville. The parties separated on April 1, 1999. Both Hunt and Dr. Asanov have *771 subsequently remarried, and Dr. Asanov has one child with his current wife.
¶ 2. On March 27, 2000, Dr. Asanov obtained a default judgment of divorce in Timiriazevsky District People's Court of the Northern Administrative Area of Moscow, Russia. Hunt then traveled to Russia and, pursuant to her petition, on May 29, 2000, the People's Court found the original, default divorce to be unreasonable and cancelled it, granting Hunt a divorce. The People's Court also granted Hunt custody of Kate and Dmitry, and ordered Dr. Asanov to pay one-third of his monthly earnings as support. On July 3, 2000, the People's Court entered an order commanding Dr. Asanov's employers to garnish his wages to pay the support. No copies of any of these orders or their accompanying translations are preserved in the record before this Court.
¶ 3. On February 13, 2001, Hunt sought to enroll and enforce the judgments of the Russian court in the Oktibbeha County Chancery Court, including the judgment of divorce and the judgment regarding support. Hunt also sought adjudication and disposition of the family's assets. Asanov answered and filed a cross-complaint seeking a reduction in child support and liberal and frequent visitation with the children. On June 6, 2001, a hearing was held. On August 13, 2001, Dr. Asanov filed a motion to modify the divorce decree seeking visitation and a modification of child support.
¶ 4. On December 6, 2001, the chancellor entered an order nunc pro tunc recognizing the validity of the foreign divorce and child custody and support decrees. The chancellor further ordered that she would "not consider any other matter with the exception of visitation."
¶ 5. On March 11, 2002, the chancellor entered a judgment in the matter, ordering Dr. Asanov to pay $625 per month in child support to Hunt and outlining visitation between Dr. Asanov and the children. The child support was an upward departure from the statutory 20% of Dr. Asanov's adjusted gross income because the payment included the payment of the children's medical insurance.
¶ 6. Dr. Asanov now appeals, arguing four issues, namely: (1) whether the chancellor erred in recognizing the validity of the foreign divorce; (2) whether the chancellor erred in not finding Hunt in contempt; (3) whether the chancellor erred in dismissing Dr. Asanov's attempt to divide the marital property; and (4) whether the chancellor erred in granting sole physical and legal custody of the children to Hunt. Hunt filed a cross-appeal, arguing (1) that Hunt is entitled to attorney's fees and other costs for having to respond to Dr. Asanov's appeal and (2) the chancellor erred in her amended order, the details of which will be discussed later in the opinion.
¶ 7. Finding no error, we affirm.

DISCUSSION OF ISSUES
¶ 8. We first note that Dr. Asanov is proceeding pro se on his appeal. Our supreme court has held that pro se parties should be held to the same rules of procedure and substantive law as represented parties. Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112, 118 (Miss.1987). However, we may credit a poorly crafted appeal so that a meritorious claim may not be lost due to poor drafting. Zimmerman v. Three Rivers Planning and Dev. Dist., 747 So.2d 853, 856 (¶ 6) (Miss.Ct.App.1999). Such is not the case sub judice.

I. DID THE CHANCELLOR ERR IN RECOGNIZING THE VALIDITY OF THE RUSSIAN DIVORCE DECREE?
¶ 9. On appeal, Dr. Asanov contests the jurisdiction of the Russian court *772 in rendering the divorce. It is well-settled that failure to cite relevant authority obviates the appellate court's obligation to review such issues. Williams v. State, 708 So.2d 1358, 1361 (¶ 12) (Miss.1998). However, because of the import of his jurisdictional claim, we will address this issue.
¶ 10. The principle of comity governs the enforcement of judgments from foreign nations. Laskosky v. Laskosky, 504 So.2d 726, 729 (Miss.1987) (citing Restatement, Second, Conflicts of Laws, § 98 (1986 Rev.)). This principle is similar to the principle of full faith and credit, except that comity is not governed by federal statutes and that its application rests with the discretion of the trial judge. Id.
¶ 11. Dr. Asanov ignores the fact that in filing for divorce in the People's Court in the Timiriazevsky District, he submitted his person to the jurisdiction of that court. The Mississippi Supreme Court reviewed a similar scenario in Laskosky, when the mother, a Mississippian living in Canada and married to a Canadian citizen, sought a divorce in Canada. After filing a petition for divorce in the Canadian court, she left Canada with her child and returned to Mississippi. The mother subsequently motioned for the foreign court to dismiss the pending divorce, and the court obliged. The husband then petitioned the Canadian court to reinstate the proceeding and to order the mother to return to Canada with the child. On appeal, the mother argued that the Canadian court lacked jurisdiction.
¶ 12. Our supreme court opined, "By filing a pleading in Canada, [the mother] submitted herself to the Canadian court's jurisdiction." Id. at 730. "Jurisdiction once acquired is not defeated by subsequent events, even though they are [of] such a character as would have prevented jurisdiction from attaching in the first instance." Id. (citing Bynum v. State, 222 Miss. 632, 637, 76 So.2d 821, 823 (1955)).
¶ 13. We find this reasoning to be persuasive. In seeking a divorce in the People's Court in Moscow, Dr. Asanov submitted to the court's jurisdiction. He cannot now claim that the court lacked the requisite personal jurisdiction to grant the divorce.
¶ 14. Furthermore, there is nothing in the record to substantiate Dr. Asanov's claim that the chancellor abused her discretion in recognizing the foreign divorce decree. Dr. Asanov claims that the divorce papers were falsified and were part of a criminal conspiracy, but these spurious allegations are unfounded.
¶ 15. We find this assignment of error to be without merit.

II. DID THE CHANCELLOR ERR IN NOT FINDING HUNT IN CONTEMPT?
¶ 16. It is well-settled that "contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994); Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990). A citation for contempt is determined upon the facts of each case and is a matter for the trier of fact. Milam v. Milam, 509 So.2d 864, 866 (Miss.1987). A citation for contempt is committed to the sound discretion of the trial court, and this Court will not reverse where the chancellor's findings are supported by substantial credible evidence. Ligon v. Ligon, 743 So.2d 404, (¶ 5) (Miss.Ct.App.1999).
¶ 17. Asanov has failed to provide any support in his brief regarding this *773 issue, and his brief presents only unsubstantiated allegations and disrespectful accusations deriding Hunt, her attorney, and various other individuals. We decline to perpetuate Dr. Asanov's accusations by reproducing them in the opinion of this Court, and we hereby strike the offensive portions of his brief.
¶ 18. The chancellor found that Hunt properly submitted her financial information to the court, and the chancellor found that there was insufficient evidence that Hunt intentionally interfered with Dr. Asanov's visitation with the children. Indeed, the record and exhibits do not indicate that Hunt interfered with Dr. Asanov's relationship with his children. While his relationship with the children is obviously strained, this is not solely the result of Hunt's actions. Dr. Asanov has made harsh accusations against his children, including sending a letter to the district attorney about his daughter, and, by his own testimony, he refused to allow Kate to join him for one visitation because he was unwilling to adjust his plans with Dmitry. Simply put: the record does not support Dr. Asanov's claim that Hunt should be found in contempt.
¶ 19. We find no abuse of discretion by the trial court in failing to find Hunt in contempt. There is no merit to this issue.

III. DID THE CHANCELLOR ERR IN DISMISSING ASANOV'S ATTEMPT TO DIVIDE THE MARITAL PROPERTY?
¶ 20. In support of this argument, Dr. Asanov writes only the following paragraph: "The lower [c]ourt erroneously denied [sic] to divide marital property of the former Asanovs family. Such error, in fact, awarded immoral criminals for their crimes. This error should be corrected."
¶ 21. After an extensive review of the record before this Court, the basis for this assignment of error is unclear. Although in her initial petition to enroll and enforce the judgment of the Russian court Hunt requested that the chancellor divide the parties' personal assets, it is clear that the parties agreed to limit their litigation to certain issues which did not include the issue of disposing of marital property or personal assets. Because the parties withdrew certain pending pleadings, on May 9, 2003, the court ordered as follows:
The only remaining issues pending before this Court are as follows:
1. An allegation that [Hunt] should be held in contempt for refusal to allow or interference with visitation;
2. A request for damages from [Hunt] for interference with [Dr. Asanov's] relationship with the parties' children and with his business, and for reimbursement of lost employment income during court appearances;
3. A request for reduction of [Dr. Asanov's] child support obligation;
4. A request for termination of [Dr. Asanov's] child support obligation if the parties' children refuse to visit with him;
5. And an allegation that [Hunt] should be held in contempt for failure to present certain financial information to the Court.
¶ 22. It is well-settled law that issues not presented to the trial court cannot be raised on appeal. Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss.1994). This assignment of error is not properly before the Court; therefore, we decline to review it.

IV. DID THE CHANCELLOR ERR IN GRANTING SOLE PHYSICAL AND LEGAL CUSTODY OF THE CHILDREN TO HUNT?
¶ 23. In his reply brief, Dr. Asanov indicates that he no longer wishes to continue *774 his appeal of this issue. Accordingly, we do not address this issue.

ISSUES ON CROSS-APPEAL

I. SHOULD HUNT BE AWARDED ATTORNEY'S FEES DUE TO ASANOV'S APPEAL?
¶ 24. Hunt requests that this Court impose sanctions on Dr. Asanov pursuant to Mississippi Rules of Appellate Procedure Rule 38. Rule 38 provides as follows: "In a civil case to which Miss.Code Ann. § 11-3-23 (1991) does not apply, if the Supreme Court or Court of Appeals shall determine that an appeal is frivolous, it shall award just damages and single or double costs to the appellee."
¶ 25. Section 11-3-23, which does not apply to cases filed after January 1, 2003, requires a statutory penalty of fifteen percent upon affirmance of a money judgment. See Superior Car Rental, Inc. v. Roberts, 871 So.2d 1286, 1287-88 (Miss.2004). This Court evaluates M.R.A.P. 38 frivolity by reference to Mississippi Rules of Civil Procedure Rule 11. Roussel v. Hutton, 638 So.2d 1305, 1318 (Miss.1994). The question is whether a reasonable person would not have a hope of success in pursuing the case; if not, the pleading is frivolous. Id.
¶ 26. Although we do not agree with Dr. Asanov's argument regarding the validity of the foreign divorce decree, we cannot say that he had no hope for success in filing his appeal; therefore, we decline to sanction Dr. Asanov.

II. DID THE CHANCELLOR ERR IN HER AMENDED ORDER?
¶ 27. The chancellor entered a final judgment in this case on January 12, 2004. Hunt filed a motion to clarify the judgment, arguing that the chancellor had failed to rule on one of Hunt's motions for contempt, to resolve the payment of past medical expenses, and to rule on the issue of outstanding child support. On February 4, 2004, the chancellor issued an amended order amending the final judgment to exclude any judgment on "any contempt action regarding unpaid child support and any unpaid medical bills...." Clearly, by the chancellor's own pen, the final judgment does not include a judgment on these issues. Hunt argues that there is no judgment regarding these issues, and that the chancellor committed error in failing to make provisions regarding past due child support and other benefits.
¶ 28. As evidenced by the chancellor's amended order, Hunt is correct in asserting that there is no judgment regarding child support, the contempt and unpaid medical bills. However, cross-appeal is not the proper avenue for extracting a judgment from the chancellor on unresolved issues. See generally M.R.A.P. 15: Mandamus to Require Trial Court Decision. There is no indication in the record that Hunt has sought to utilize the provisions of M.R.A.P. 15 in securing a judgment regarding these unresolved issues. Because there is no final judgment regarding this issue, it is not properly before this Court, and, therefore, is not ripe for our consideration.

CONCLUSION
¶ 29. Finding no merit to the claims presented on appeal and cross-appeal, we affirm the judgment of the chancery court.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*775 KING, C.J., MYERS, P.J., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.